UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AMARIA VONDRAN,

    Plaintiff,

  v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 16 CV 9013

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Amaria Vondran seeks a writ of mandamus to compel the Social Security Administration to issue her a social security number. She also alleges that the Social Security Administration denied her application for a social security number without a hearing, in violation of her procedural due process rights. Defendant, Nancy Berryhill,[1] Acting Commissioner of Social Security, moves to dismiss the complaint. For the following reasons, defendant's motion to dismiss is granted.[2]

I.   **Legal Standards**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain factual allegations that plausibly suggest a right

---

[1] Per Federal Rule of Civil Procedure 25(d), the Clerk is directed to substitute Nancy A. Berryhill for Carolyn W. Colvin as the acting Commissioner of Social Security. Fed. R. Civ. P. 25(d).

[2] Vondran's motion for leave to file a sur-reply, [26], is denied because defendant's reply brief did not raise new arguments that were outside the scope of Vondran's response, and no further briefing is necessary.

to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must construe all factual allegations as true and draw all reasonable inferences in the plaintiff's favor in considering a Rule 12(b)(6) motion, but courts need not accept legal conclusions or conclusory allegations. *Id.* at 680–82. Rule 12(b)(6) further limits consideration to "allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). I take judicial notice of relevant regulations and procedures pertaining to the SSA and to the SSN application process, even if such regulations and procedures do not appear in the complaint. Fed. R. Evid. 201(b); *see White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016) (public records may be considered with a Rule 12(b)(6) motion).

## II. Background

Vondran was born on May 25, 1992, "at home in Illinois" and she has lived in the United States her entire life. [6] ¶¶ 4, 11.[3] Vondran's parents were both born in the United States and they have never left the country. *Id.* ¶¶ 8–10. Each of her five siblings have SSNs. *Id.* ¶ 12. When Vondran was seventeen, she tried to obtain a social security number. *Id.* ¶ 14. Approximately one year later, Social Security Administration employees told Vondran's mother that they believed she kidnapped Vondran and brought her over the border from Mexico.[4] *Id.* ¶ 15. "[Vondran]'s family was homeless and was scared to return to the Social Security Administration

---

[3] Bracketed numbers refer to entries on the district court docket.

[4] The employees never reported Vondran's mother to the police for kidnapping. *Id.* ¶ 16.

office because of fear that their children would be taken into custody of the Illinois Department of Human Services." *Id.* ¶ 17. Thereafter, Vondran made several other attempts to obtain an SSN. *Id.* ¶ 18. In support of her most recent SSN application, Vondran provided the following evidence of her U.S. Citizenship: (1) a U.S. Department of State Birth Affidavit by her brother, Joshua Vondran, *id.* ¶ 28; (2) a Certificate of Dedication, *id.* ¶ 29; (3) a graduation announcement, *id.* ¶ 30; (4) a list of kindergarten graduates, *id.*; (5) a graduation certificate, *id.*; (6) a State of Illinois Delayed Record of Birth, *id.* ¶ 32; and (7) affidavits from her father, brother, sister, and two friends, *id.* ¶¶ 33–37. Yet again, the SSA denied Vondran's application for an SSN. *Id.* ¶ 38.

Vondran filed a request for reconsideration, but the SSA denied it. *Id.* ¶¶ 39–40. Next, Vondran requested a hearing before an Administrative Law Judge, which the SSA did not grant. *Id.* ¶¶ 41–43. Vondran still does not have an SSN; because of this, she cannot drive, gain employment, obtain medical insurance, or attend college. *Id.* ¶¶ 44–47.

## III. Analysis

### A. Jurisdiction

Mandamus jurisdiction, 28 U.S.C. § 1361, is proper for claims under the Social Security Act that are procedural in nature. *Burnett v. Bowen*, 830 F.2d 731, 738 (7th Cir. 1987). Vondran says that the SSA has a "no process" policy for handling requests, like hers, to review a decision to deny an application for an SSN, to have a hearing, and other similar subsequent procedures. Her claim, therefore, is procedural in nature and jurisdiction over her writ of mandamus is proper.

Although 42 U.S.C. § 405(g) generally limits judicial review to certain types of decisions by the Commissioner of Social Security, courts may nevertheless review constitutional challenges to agency action, so long as Congress has not manifested an intent to foreclose jurisdiction by "clear and convincing" evidence. *Califano v. Sanders*, 430 U.S. 99, 109 (1977); *see also Bhd. of Locomotive Engineers & Trainmen Gen. Comm. of Adjustment, Cent. Region v. Union Pac. R. Co.*, 522 F.3d 746, 751 (7th Cir. 2008) *aff'd*, 558 U.S. 67 (2009). Federal courts have jurisdiction over Vondran's constitutional claim.[5]

## B. Writ of Mandamus

Mandamus is a drastic remedy that should only be invoked in "extraordinary situations." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980). A writ of mandamus should issue only if Vondran can show (1) a clear right to the relief sought, (2) defendant had a duty to do the act in question, and (3) no other adequate remedy is available. *Burnett*, 830 F. 2d at 739 (citations omitted).

Vondran seeks to compel the SSA to issue her an SSN. In order to show that she has a "clear right" to that remedy, Vondran must show that she is entitled to an SSN. To obtain an SSN, an applicant must produce convincing evidence of the

---

[5] Vondran's prayer for relief for her due process claim includes actual and punitive damages (in addition to injunctive relief). For the purposes of this motion, I will presume that her due process damages claim is a *Bivens* action against Berryhill, on the theory that Vondran is alleging that a federal official violated the Constitution and that no other federal sources are available for the remedy. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics Agents*, 403 U.S. 388 (1971). Defendant points out that Vondran did not identify a statute that provides money damages for a denial of an SSN, and defendant notes that the agency does not waive its sovereign immunity to the extent Vondran's claim is based on a constitutional tort theory. The viability of Vondran's claim for damages is not material to the outcome of the pending motion to dismiss.

4

applicant's age, identity, and citizenship. 20 C.F.R. § 422.107(a). Vondran points to the following evidence she submitted in support of her application for an SSN: (1) a U.S. Department of State Birth Affidavit by her brother; (2) a Certificate of Dedication; (3) a graduation announcement; (4) a list of kindergarten graduates; (5) a graduation certificate; (6) a State of Illinois Delayed Record of Birth; (7) and affidavits from her father, brother, sister, and two friends. Defendant acknowledges that Vondran submitted probative evidence of her age, through her delayed birth certificate; however, defendant argues that Vondran did not submit sufficiently convincing evidence of her identity or citizenship because her evidentiary submission did not comply with internal guidelines followed by the agency. As a result, defendant argues, she cannot show that she has a clear right to an SSN.

The regulations require that evidence of identity contain enough information to identify the applicant; it must include the applicant's name and either the applicant's "age, date of birth, or parents' names," or the applicant's "photograph or physical description." 20 C.F.R. § 422.107(c). Acceptable evidence of identity includes "a driver's license, identification card, school record, medical record, marriage record, passport, Department of Homeland Security document, or other similar evidence serving to identify [the applicant]." *Id.* A birth record, however, is not sufficient evidence of identity. *Id.* With respect to citizenship, "an applicant for an original [. . . SSN] may prove that he or she is a U.S. citizen by birth by submitting a birth certificate or other evidence, as described in paragraphs (b) and (c) of this section, that shows a U.S. place of birth." *Id.* § 422.107(d).

5

In evaluating submissions of evidence, the SSA uses an internal guidebook called the Program Operations Manual System, which ranks types of documents by their probative value. *See* POMS HOME, SOCIAL SECURITY ADMINISTRATION, *available at* https://secure.ssa.gov/apps10/. The POMS states that "evidence of identity must be: issued at a later time and for a different purpose than the birth record; and a current, unexpired document to establish the individual's continued existence." POMS RM 10210.405(C)(3). The SSA does not accept birth records as evidence of identity because such records do not show that the person is still alive. POMS RM 10210.405(C)(4). Vondran's two birth records, Birth Affidavit and Delayed Record of Birth, therefore, do not suffice. Moreover, her Certificate of Dedication, graduation-related documents, and affidavits of friends and family members do not satisfy the POMS requirements for evidence of identity because they were issued more than two years ago and they do not have an expiration date. *See* POMS RM 10210.405(C)(5) (stating that for documents from adult applicants that do not have an expiration date, "the date issued should be within the last two years"). The Certificate of Dedication, graduation-related documents, and affidavits also do not constitute acceptable evidence of identity because they do not show that Vondran is still alive. POMS RM 10210.405(C)(3).

The agency does not accept birth certificates as proof of U.S. birth (and thus, citizenship) if they were issued after the applicant was five years old. POMS RM 10210.505. Vondran does not have a U.S. passport or a qualifying birth certificate, and her other documents are not accepted by the agency for proof of citizenship. *See*

6

POMS RM 10210.505, 10210.510, 10210.520, 10210.525 (listing different tiers of proof and corresponding documents).

Vondran does not dispute that her documents did not meet the POMS guidance, but argues that she is entitled to an SSN because the POMS are not binding and her evidence is convincing.[6] Vondran criticizes the logic behind the SSA's policies for assessing evidence of age, identity, and citizenship. The statute makes clear that the Commissioner must "take affirmative measures to assure that social security account numbers will, to the maximum extent practicable, be assigned to all members of appropriate groups or categories of individuals." 42 U.S.C. § 405(c)(2)(B)(i). In fulfilling this mission, though, the Commissioner "shall require of applicants for social security account numbers such evidence as may be necessary to establish the age, citizenship, or alien status, and true identity of such applicants." *Id.* § 405(c)(2)(B)(ii). Congress has given the Commissioner the authority to determine the evidence that merits issuing an SSN, and the Commissioner has decided that unless the applicant can meet "all of the evidence requirements" for age, identity, and citizenship, the SSA will not assign an SSN. 20 C.F.R. § 422.107(a). Since Vondran has not presented documents to satisfy the

---

[6] The complaint alleges that Vondran's evidence corresponds to the primary, secondary, and fourth levels of evidence, [1] ¶¶ 27–37, but her delayed birth record (issued after age five) and birth affidavit do not correspond to primary level evidence, her religious and school records do not show a U.S. place of birth so they are not secondary level evidence, her birth record is not an amended record so it is not fourth level evidence, and her affidavits do not correspond to fourth level evidence. *See* POMS RM 10210.505, 10210.510, 10210.525. In responding to defendant's motion to dismiss, Vondran does not argue that her evidence matches the POMS categories.

7

agency's requirements, defendant argues that the duty to assign an SSN has not been triggered.

Vondran's allegations, accepted as true, demonstrate that she is a U.S. citizen and they support an argument that the SSA should be more forgiving of her evidentiary showing. But, her allegations do not show that she has a clear right to an SSN or that the Commissioner has a duty to issue one. The Commissioner of Social Security has "full power and authority to make rules and regulations and to establish procedures" surrounding the evidence that applicants submit in furtherance of obtaining SSNs. *See* 42 U.S.C. § 405(a). Vondran's disagreement with the requirements does not change the Commissioner's discretion to determine her eligibility for an SSN. The POMS are not binding, but the Commissioner is permitted to set the evidentiary requirements for an SSN, and Vondran does not dispute that she has not satisfied the Commissioner's standards. Absent a clear right to the relief sought and a duty to do the act in question, a writ of mandamus cannot issue. Defendant's motion to dismiss Count I is granted.[7]

---

[7] Vondran's claim that she has no remedy other than mandamus depends on the futility of reapplying. But she may be able to successfully reapply; according to the State Department's website, it is possible to obtain a U.S. passport without an SSN. *See Frequently Asked Questions*, U.S. Passports & International Trade, https://travel.state.gov/content/passports/en/passports/FAQs.html ("If you would like to apply for a U.S. passport, and you don't have a Social Security number, you will need to submit a statement, signed and dated, which includes the phrase, 'I declare under penalty of perjury under the laws of the United States of America that the following is true and correct: I have never been issued a Social Security number by the Social Security Administration.'"). If reapplication is available, as it appears to be, then mandamus is not appropriate.

## C. Procedural Due Process Claim

To state a claim for a violation of procedural due process, Vondran must show: (1) a deprivation of a protected interest, and (2) insufficient procedural protections surrounding that deprivation. *Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 534 (7th Cir. 2008) (citing *Doherty v. City of Chicago*, 75 F.3d 318, 322 (7th Cir. 1996)). Vondran says that the SSA denied her application for an SSN, her request for reconsideration, and her request for a hearing before an ALJ without due process; Vondran argues that the denial of a hearing before the ALJ amounted to no process. She says she has exhausted all options within the SSA and therefore, the Fifth Amendment entitles her to a hearing about her denied SSN application.

An SSN is a statutory entitlement for eligible applicants. *See Goldberg v. Kelly*, 397 U.S. 254, 262–63 (1970). As a result, an application for an original SSN cannot be denied from an eligible applicant without due process. *See Wright v. Califano*, 587 F.2d 345, 354–55 (7th Cir. 1978). Defendant does not contest that Vondran has a protected interest in her SSN and instead, the agency focuses its arguments on the sufficiency of existing procedural safeguards in the SSN application process.

Not every deprivation requires "the full arsenal of available procedural safeguards." *Clancy v. Office of Foreign Assets Control of U.S. Dep't of Treasury*, 559 F.3d 595, 600 (7th Cir. 2009). Courts use the *Mathews v. Eldridge* test to determine what procedures are necessary to avoid a procedural due process violation. *Id.* (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). That test balances: (1) the affected private interest of the official action, (2) the risk of erroneous deprivation of

that interest through the existing procedures and the probable value of additional procedural safeguards, and (3) the governmental interest, which includes the fiscal and administrative burdens of additional procedural safeguards. *Mathews*, 424 U.S. at 334–35. "The relevant inquiry is not what additional procedures might be helpful but whether the existing procedures are constitutionally defective because they present an unreasonable risk of an erroneous deprivation of the private interest, in light of the particular situation (the government's interest and the probable value of additional safeguards)." *Clancy*, 559 F.3d at 600.

The existing SSN application process, defendant argues, is fair and reliable. It relies on an examination of written documentation to satisfy statutorily mandated proof of age, U.S. citizenship, and identity. *See* 42 U.S.C. § 405(c)(2)(B)(ii). For applicants who are over the age of twelve, the application process also includes an in-person interview. 20 C.F.R. § 422.107(a). The risk of erroneous denial of an SSN application is low because the SSA officers who review the applications have access to detailed guidelines on how to evaluate various forms of evidence, and according to defendant, "only two documents are generally needed" to satisfy the statutory requirements. [24] at 6. Even if an application were incorrectly denied, defendant says the applicant would have received a notice explaining the flaw in the application and what the applicant can do to request a second review or to submit a new application. *See* POMS RM 00299.020. Defendant emphasizes that when an applicant requests a second review, a different SSA officer reviews the application and evidence anew to make a determination. *See* [20] at 37

(attaching a blank SSA Form "SSA-L676" that states "If you think you should get a Social Security number or card based on what you have given us, you can ask us to review your case. Someone who did not look at your first application will review it. To ask for a review, please call, write, or visit the Social Security office at the address shown at the top of this letter."). There is no limit on the number of times an applicant may reapply for an SSN.[8]

The SSN application process is based on verifiable documentary evidence, so an ALJ would not need oral testimony to further explain the documentation or to help the ALJ make a credibility determination; the documents speak for themselves. Furthermore, as defendant points out, additional procedures such as an evidentiary hearing would cause the government to pay greater costs and to bear a greater administrative burden.[9] I agree with defendant that on balance, the SSA application process provides sufficient procedural safeguards to satisfy the *Mathews v. Eldridge* test. Based on the allegations of the complaint and facts subject to judicial notice, Vondran had an opportunity to submit evidence, the SSA applied clear guidelines to minimize error and communicated to Vondran the reasons for its decision, and Vondran had an opportunity to reapply. It follows that Vondran was

---

[8] Vondran takes issue with defendant's risk assessment of erroneous denials. She points to a forty-four percent reversal rate of cases heard by ALJs from the SSA field offices. That reversal rate, however, is not comparable to the decisions the regulations require regarding citizenship, age, and identity. Moreover, that reversal rate seems to support the idea that risk of error is minimized when discretion is limited by basing all decisions about citizenship, age, and identity on clearly defined documents.

[9] Defendant notes: "In fiscal year 2016 alone, SSA issued over 16 million original and replacement SSN cards." [24] at 8 (citing Social Security Administration's Fiscal Year 2016 Agency Financial Report, 147 (2016), https://www.ssa.gov/finance/2016/Full%20FY%202016%20AFR.pdf).

afforded all the process she was due. The complaint, therefore, does not allege a plausible claim for a violation of procedural due process rights. Defendant's motion to dismiss Count II is granted.

The dismissal is without prejudice and Vondran has leave to file an amended complaint because "[d]istrict courts routinely do not terminate a case at the same time that they grant a defendant's motion to dismiss; rather, they generally dismiss the plaintiff's complaint without prejudice and give the plaintiff at least one opportunity to amend her complaint." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). If Vondran does not submit an amended complaint by May 30, 2017, this dismissal will convert to a dismissal with prejudice (albeit without prejudice to Vondran reapplying to the SSA) and final judgment will be entered.

## IV. Conclusion

Defendant's motion to dismiss, [19], is granted.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 5/9/2017